BERNARDO GAUTIER GONZÁLEZ, Plaintiff and Appellant, *v.* PAULINO RODRÍGUEZ, Defendant and Appellee.

No. 8136.   Argued March 21, 1941.—Decided March 24, 1941.

*Pedro E. Anglade,* for appellant.   *Adolfo Porrata Doria,* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

The plaintiff alleges that on September 28, 1936, he paid to the defendant, by mistake and under the belief that the defendant was a lawyer in the practice of his profession, and that he had rendered him professional services, the amount of $1,200; that the defendant led him to believe that he (the defendant) was a lawyer and that the plaintiff owed him the sum aforementioned for professional services performed on his behalf; that it is not true that the defendant is a lawyer nor that he has performed any services in the name of the plaintiff; that the latter has tried to make

the defendant return the sum which he unduly collected but that the defendant has refused to do so; and he requests that judgment be rendered against the defendant for the amount of $1,200, with costs and attorney's fees.

The defendant admits having received the amount claimed, denies the false representations charged, and alleges that payment was made to him in accordance with a previous verbal agreement between him and the plaintiff, and in order to compensate the defendant for the expenses incurred and the services rendered through a period of sixteen years in the lawsuits between the heirs of Alberto Gautier and C. and J. Fantauzzi; that the amount received by the defendant was the one which the plaintiff had to pay as his share of said expenses.

The present appeal has been taken by the plaintiff against a judgment rendered by the District Court of Guayama, whereby it dismissed his complaint and imposed upon him the payment of costs and attorney's fees.

██ Appellant alleges that the judgment appealed from is contrary to the evidence and the law.

We have carefully studied the transcript of the evidence which consists of 292 pages. This opinion would become unnecessarily extensive if we were to make a summary of the testimony of all and everyone of the witnesses presented by both parties. The essential facts arising from the whole evidence are as follows:

The plaintiff, Bernardo Gautier, is the brother of Adela Gautier, the wife of the defendant. These two brothers, together with two others named Margarita and Luis, were the judicially acknowledged natural children of Alberto Gautier, who died in France, leaving therein the greater part of his property and a legitimate daughter named Sofía. In the belief that his wife and the other natural children of Gautier had a right to participate in the inheritance, the plaintiff, on behalf of his wife, took steps to claim the inheritance

corresponding to the natural acknowledged children. The plaintiff was invited to become a party to the suit and to contribute to the expenses, but he refused to do so, according to his own words, "because I always believed that we could not win, that we would lose and that is why I was not willing to give my money." The plaintiff took no steps whatsoever to obtain his share in the inheritance.

After doing certain acts and entering into negotiations which lasted from 1920 until 1936, the heirs residing in France commissioned Attorney Tomás Bernardini to try to arrive at a settlement with the heirs residing in Puerto Rico. Said attorney intervened and after various interviews, a settlement was arrived at as a result of which the plaintiff was to receive and he did receive the amount of $6,000. Attorney Bernardini narrates what took place in the following manner:

"A.—Well, I attempted to make a settlement and in fact, through Doña Sofía and through her attorney-in-fact, Mr. Antonio Fantauzzi, after several interviews and negotiations we reached an agreement. Then as this matter affected all of them and as I had dealt with the brothers who resided here, I did not feel willing to advise them to reach an agreement with the three because Bernardo was abroad, and then I told Paulino, who was the one who had brought about all this long lawsuit and who, according to my knowledge, had incurred in and had remitted to France the attorney's fees, then I told him that it was fair to Sofía as well as to them to enter into an agreement and that I did not feel entitled to advise it unless Bernardo became a part to the same. Due to this, Bernardo came to my office, I informed him about the agreement, about the property and the amount of the agreement, and he came accompanied by Paulino and then we reached an agreement and had to increase an amount because we had not taken Bernardo into account.

"⸺⸺⸺  *  *  *  *  *  *

"A.—Then Bernardo agreed to the settlement, that the agreement be made on behalf of all and I, of course, had to retain the right to deliver it to Sofía Gautier, their sister, and who appeared represented by Antonio Fantauzzi, her attorney-in-fact in Puerto Rico. We had then to increase the amount to favor Sofía and Bernardo,

and in order to finally leave the matter settled. The agreement dealt with their assigment, all, the four of them, their assignment of their hereditary rights as heirs of their father, Alberto Gautier, to Sofía, and in that way the legal controversy was ended in France. When Bernardo agreed to this, then Mr. Rodríguez told him: 'Well, it is convenient that you know that expenses have been incurred and that we have paid between the three of us and that you have to contribute your share, in order to meet the expenses because they have to be met and because we have to provide for the steps which have been taken.' Bernardo agreed to this and said to Paulino: 'I agree:' Then there was some talk to the effect that Bernardo would pay $1,500. He said at first that he would give the $1,500, but that Paulino would have to pay to a brother, to make a present of $300 to a brother of them who did not care to file a suit for his filiation and who is insolvent, and on the assumption that the other would also give him something because he is their brother although he is not acknowledged. Then the $1,500 were reduced to $1,200 and Bernardo agreed to pay the $1,200 to . . . and to take care of the compensation to his brother from all the other brothers. The agreement was thus ended and then Paulino continued to act with me, as I was the go-between, he was the one who brought about the agreement, the one who took the steps, the one who persuaded Sofía, etc. And while the deeds were drawn . . . and then two deeds were executed because Bernardo did not come, he did not come in time and then a deed was drawn as I had the word of Bernardo and I knew that he is a gentleman who never goes back on his word. I then executed a deed for the three and afterwards we executed another on behalf of Bernardo which was signed on the same day. Bernardo himself came later, he was summoned by the telephone by Paulino and then he came. He came later and I had to execute another deed. I was sure of that and he came in effect and signed the deed. That same day, in the conversation had with Paulino whereby he agreed to deliver to him the $1,200 putting apart the $300 for his brother who had not been acknowledged. On that same day Mr. Gautier spontaneously. . . .

"Q.—Which Gautier, what was his name?

"A.—Bernardo; Mr. Gautier spontaneously told me that he was going to give me $500 for my intervention and in effect, after the deed had been signed, he brought to me, I do not know if it was on that same day or on the following, a check for $500, which I kept and attempted to return to Fantauzzi because I was of the

opinion that I did not have to, that once that he had knowledge of that check, and then Fantauzzi told me: 'No, no, he has given you that check spontaneously.'

"" *       .*       *       *       *       *       *

"Q.—Then that day, when the defendant Bernardo Gautier agreed to deliver or to give to the plaintiff Paulino Rodríguez the $1,200, was it specified there the reason for this?

"A.—Yes, Paulino told him: 'You have to contribute your share as the others. We have maintained a long lawsuit, we have sent so many thousand francs', I do not recall that detail, and he spoke to him about the expenses in which he had actually incurred. I have seen letters shown to me by Paulino in regard to the matter of his attorneys there in France. And in order to contribute to that, the same as the others, to the expenses of that long lawsuit maintained by them, the agreement was entered into through my intervention and advice, it was for that that he gave him the $1,200.

"Q.—In consequence thereof, the delivery of that money by Bernardo, it was done voluntarily?

"A.—Of course.

"Q.—In full knowledge of what he was doing?

"A.—And taking into account the agreement which was effected, to which he had been a party on condition with Paulino to pay that amount, and he paid it.

"Q.—Tell me something, did Paulino, the defendant, state at any moment there that he was a lawyer or did he act as a lawyer?

"A.—No, no; Paulino was not a lawyer, nor did he talk as a lawyer, nor could he talk like a lawyer."

The testimony of the defendant and of the Attorney Bernardini was corroborated by that of Adela and Margarita Gautier, sisters of the plaintiff.

The plaintiff based his alleged right to have the defendant return to him the sum claimed, in the so called false personation of the defendant to the effect that he was an attorney authorized to practice the profession and that the amount which he was collecting was for services rendered to the plaintiff as his lawyer in the proceedings followed for the claim of the inheritance of Gautier. To uphold said contention, the plaintiff offered the testimony of two individuals who worked in the garage and in the house of the plaintiff,

washing automobiles and mowing the grass in the yard. Both testified the same thing: that on a certain day in September, 1936, they left with the plaintiff in his automobile, from Martín Peña to Patillas; that when they reached Patillas, the plaintiff went into the house of the defendant, remaining there for about fifteen minutes; that after going to the office of the defendant, both returned with some papers, got into the automobile and left for Guayama; that the defendant was driving and the plaintiff was sitting beside him, the two witnesses riding in the back; that on the way, plaintiff and defendant talked about something which the first one had to pay to the latter, *for his work as an attorney;* that Paulino told him that he had to pay him for *his services as attorney* at least $1,500 and that they finally agreed in the amount of $1,200.

The lower court did not give any credit to the testimony of the plaintiff and of his two employees in regard to the alleged false personation of the defendant to the effect that he was an attorney in the practice of the profession and that the amount that he was trying to collect was for professional services. It is hard to believe that the plaintiff could have been so easily deceived by the defendant, who had been married to his sister for more than twenty years and whom he frequently visited, and that the plaintiff did not know that the defendant had never been an attorney and had never been authorized to practice law.

The conclusions arrived at by the trial court, and with which we entirely agree, are as follows:

"This is an action filed in accordance with the provisions of Sections 1796 *et seq.* of the Civil Code, (1911 ed.) and consequently, the plaintiff had to prove that the defendant had received from him an amount of money which he was not entitled to collect, and that the delivery of said money was effected through a mistake of fact. *Succession of Marín* v. *Municipality of Arecibo,* 28 P.R.R. 477; *Dávila* v. *Martínez et al.,* 37 P.R.R. 786, and *Silva* v. *Heirs of Caratini,* 51 P.R.R. 754.

"The contention to the defendant, on the contrary, was to the effect that the plaintiff voluntarily paid him and with knowledge of the facts of the case, the amount of $1,200 to compensate him for his services and expenses incurred in relation to a claim filed by his other three brothers against the legitimate succession of Alberto Gautier in claim of their hereditary portions, the amount of $6,000 having been adjudicated to the plaintiff when the claim was settled.

"We have studied all the evidence presented by both parties and we are of the opinion that the preponderance of the same is in favor of the contention of the defendant and that consequently it was satis-factorily proven that the payment by the plaintiff to the defendant of the sum of $1,200 was made by the former voluntarily and with knowledge of all the facts of the case and to compensate the defendant for his services and expenses incurred in the proceedings had in regard to the aforementioned claim. *American R. R. Co. of P. R.* v. *Wolkers,* 22 P.R.R. 264; *Pérez et al.* v. *Nogueras,* 31 P.R.R. 247, and *Rubio* v. *Salvador R. Nin, Inc.,* 48 P.R.R. 952.''

We are of the opinion that the preceding conclusions are fully sustained by the evidence and that the judgment appealed from must be affirmed.